**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000285
18-APR-2022
07:47 AM
Dkt. 116 SO**

NO. CAAP-21-0000285

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF AK AND SK
(FC-S NO. 18-00112)

IN THE INTEREST OF MK
(FC-S NO. 18-00241)

IN THE MATTER OF ADOPTION OF
A FEMALE CHILD, Born on 00/00/000
A FEMALE CHILD, Born on 00/00/000
A MALE CHILD, Born on 00/00/000
by DR AND MR, A Married Couple
(FC-A NO. 21-1-6005)

IN THE MATTER OF ADOPTION OF
A FEMALE CHILD, Born on 00/00/000
A FEMALE CHILD, Born on 00/00/000
A MALE CHILD, Born on 00/00/000
by CG AND AG, Husband and Wife
(FC-A NO. 20-1-6137)

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

Intervenors/Petitioners/Respondents-Appellants MR (sometimes referred to as **Aunt**) and DR (together, **Appellants**) appeal from the Family Court of the First Circuit's (**Family Court**)[1] April 6, 2021 Orders Concerning Child Protective Act entered in FC-S No. 18-00112 and FC-S No. 18-00241 (**TPR Cases**), and its April 6, 2021 Orders filed in FC-A No. 20-1-6137 and FC-A No. 21-1-6005 (**Adoption Cases**), granting Petitioner/Respondent-Appellee Department of Human Services' (**DHS**) petition for adoption by Resource Caregivers (**RCGs**) CG and AG to adopt AK, SK, and MK (**Children**), and denying Appellants' petition to adopt the Children.

In May of 2018, DHS received reports of physical neglect of AK and SK, who were then 3-years-old and less than 1-year-old. Their parents had a history of drug abuse and homelessness, and there had been previous reports of potential neglect. On May 14, 2018, DHS filed a Petition for Temporary Foster Custody in FC-S No. 18-00112. Father stipulated to jurisdiction and foster custody, and at Father's request, DHS agreed to initiate an Interstate Compact Placement of Children (**ICPC**) review of Father's family members on the mainland for placement of AK and SK. Mother was not served, and she did not appear at the hearing, although DHS represented that they had

_____

[1]     The Honorable John C. Bryant, Jr. presided.

2

been in telephone contact with Mother and she was verbally informed about the hearing.  AK and SK were placed in temporary foster custody in the care of the RCGs shortly thereafter, after an initial resource care giver asked that they be moved to another foster home because AK reportedly attempted to harm another child in the initial home.

MK was born prematurely in September of 2018, and placed in a neonatal intensive care unit.  His meconium later tested positive for marijuana and methamphetamines.  On October 3, 2018, DHS filed a Petition for Temporary Foster Custody of MK in FC-S No. 18-00241.  Although Mother and Father were apparently not yet served, the petition was granted on October 5, 2018, and MK was placed in the RCG's home with his sisters.

At a November 26, 2018 hearing, Mother stipulated to jurisdiction and foster custody of the Children in both TPR Cases, and Father stipulated to jurisdiction and foster custody of MK in FC-S No 18-00241.  Mother indicated if reunification is not possible, then she preferred the Children be permanently placed with family members, and she requested that DHS initiate an ICPC of Aunt, who is Father's sister.  DHS Social Worker Erin Asato (**Asato**) reported that, based on her emails with paternal grandmother, she believed that Aunt supported the current placement and was seeking to take on foster custody placement only if the RCGs could not continue.  At this point, Mother and Father's parental rights had not been terminated.  The Family

3

Court ordered Asato to contact Aunt directly to ask if she was willing to be a permanent placement and to initiate the ICPC if she agreed.

Mother died of a drug overdose in August of 2019.

On January 23, 2020, DHS moved to terminate Father's parental rights with a goal of adoption by the RCGs. On February 23, 2020, Aunt emailed Asato stating that she "wants to take the his [sic] kids" and that she had "emailed over and over to get information with no reply." DHS then initiated the ICPC for Appellants' home, which was approved on July 13, 2020. On April 7, 2020, the Family Court granted Appellants' motions to intervene in FC-S No. 18-00112 and FC-S No. 18-00241, where Appellants indicated they wished to adopt the Children.

On July 28, 2020, the Family Court accepted Father's stipulation to terminate his parental rights, approved DHS's permanent plan with the goal of adoption by the RCGs, and set trial on the issue of permanent placement.

On October 8, 2020, on behalf of the RCGs, DHS filed an adoption petition in FC-A No. 20-1-6137 designating RCGs as the prospective adoptive parents for the Children. On January 8, 2021, Appellants filed a competing adoption petition in FC-A No. 21-1-6005. The same day, DHS filed a Notice of [DHS's] Withholding of Consent to [Appellants'] Adoption Petition (**Notice of No Consent**) in FC-A No. 21-1-6005, stating that it was withholding consent to Appellants' adoption of the Children

4

because DHS had assessed that it was in the Children's best interests to be adopted by the RCGs.

After a consolidated trial on permanent placement and the competing adoption petitions, the Family Court denied Appellants' petition and granted DHS's petition. In its April 6, 2021 Order on DHS's petition, the Family Court found that: (1) the Children are adoptable under Hawaii Revised Statutes (**HRS**) §§ 578-1 (2018) and 578-2 (2018); (2) the Children are physically, mentally and otherwise suitable for adoption by CG and AG; (3) CG and AG are fit and proper persons and financially able to give the Children a proper home and education; and (4) the adoption of the Children by CG and AG is in the best interests of the Children. In its April 6, 2021 Order on Appellants' petition, the Family Court found that: (1) the Children are adoptable under HRS §§ 578-1 and 578-2; (2) the Children are physically, mentally and otherwise suitable for adoption by MR and DR; (3) MR and DR are fit and proper persons and financially able to give the Children a proper home and education; but (4) the adoption of the Children by MR and DR is not in the best interests of the Children.

On May 21, 2021, the Family Court filed 46 pages of Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**) further explicating its placement and adoption rulings in the TPR Cases and the Adoption Cases.

Appellants raise six points of error on appeal, contending that the Family Court erred: (1) in COL 21, when it held that in the context of an adoption, the term "best interests of the child" can never mean the "better interests of the child;" (2) in COL 23, when it concluded that kinship should not be considered as a substantial factor in determining which placement is in the Children's best interests; (3) in FOFs 194 through 197, and COLs 28, 30, and 34, when it found that DHS had not unreasonably withheld its consent to the adoption of the Children by Appellants; (4) in FOFs 170-173, 200-201, and COLs 21 and 42, when it found that the RCGs had satisfied the requirement in HRS § 578-8(a)(3) that the petitioners in an adoption must be financially able to give the children a proper home and education; (5) in FOFs 174-176, 193-194, 199, 211, and 214, and COLs 20-22, and 43, in its application of the factors listed in HRS § 571-46(b) (2018) (best-interest-of-the-child factors) by treating DHS's permanent placement recommendation in a manner that is inconsistent with the Hawaiʻi Supreme Court's opinion in In re AS, 132 Hawaiʻi 368, 322 P.3d 263 (2014); and (6) in FOFs 135-136, 138-139, 143-144, 146-147, 174-176, 186, 194, 200, 202, 210-215, and COLs 38 and 40, when it treated the length of the Children's placement with the RCGs as creating a presumption that the Children should be placed with them. Appellants submit that the Family Court's decision is clearly erroneous and should be reversed.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellants' points of error as follows:

Adoption proceedings are governed by HRS chapter 578. See In re HA, 143 Hawaiʻi 64, 75, 422 P.3d 642, 653 (App. 2017). "[No] decree of adoption may be entered unless all of the HRS § 578-8(a) requirements have been satisfied." Id. at 78-79, 422 P.3d at 656-57. HRS § 578-8(a) (Supp. 2019) provides, in part:

> **§ 578-8 Hearing; investigation; decree.**
> (a) No decree of adoption shall be entered unless a hearing has been held . . . . After considering the petition and any evidence as the petitioners and any other properly interested person may wish to present, the court may enter a decree of adoption if it is satisfied that:
>
> > (1)  The individual is adoptable under sections 578-1 [jurisdiction] and 578-2 [consent];
> >
> > (2)  The individual is physically, mentally, and otherwise suitable for adoption by the petitioners;
> >
> > (3)  The petitioners are fit and proper persons and financially able to give the individual a proper home and education, if the individual is a child; and
> >
> > (4)  The adoption will be for the best interests of the individual[.]

HRS § 578-2(a) provides, in part, that "a petition to adopt a child may be granted only if written consent to the proposed adoption has been executed by: . . . . (6) Any person or agency having legal custody of the child or legally empowered to consent[.]"

"DHS, as permanent custodian of a child, has the discretion in the first instance to determine where and with whom

7

a child shall live." In re AS, 132 Hawaiʻi at 370, 322 P.3d at 265. "[T]his placement determination is, however, subject to review by the family court, which is authorized and required by law to determine whether the placement is in the child's best interests." Id. at 378, 322 P.3d at 273. "[T]he party challenging DHS's permanent placement recommendation bears the burden of proving by a preponderance of the evidence that the permanent placement is not in the child's best interests[.]" Id. at 388, 322 P.3d at 283.

(1) In COL 21, the Family Court concluded:

21. The determination of which permanent placement is in the children's best interests is based on the HRS § 571-46(b) factors and is not based on which home is the better home or the best home in terms of financial resources or other resources. In re Doe, 95 Hawaiʻi 201, 238, 20 P.3d 634, 671 (App. 2000), *rev'd on other grounds*, 95 Hawaiʻi 83, 20 P.3d 616 (2001) (citations omitted) (The "best interests" of a child can never mean the better interests of the child. It is not a choice between a home with all the amenities and a simple apartment, or an upbringing with the classics on the bookshelf as opposed to the mass media, or even between parents or providers of vastly unequal skills).

Appellants correctly point out that In re Doe was an appeal from a decision terminating parental rights; in that context, this court noted that where "important parental rights and interests [are] at stake," a family court may not terminate parental rights just because the adoptive parent or other permanent custodian can provide a "better" life than the natural parent. 95 Hawaiʻi at 238-39, 20 P.3d at 671-72. Here, however, we are reviewing a contested adoption; the disputed issue before us is not whether the Family Court erred in terminating Father's parental rights, but whether the Family Court clearly erred in

its rulings on the competing adoption petitions and in its
ultimate determination that Children's adoption by CG and AG, as
opposed to MR and DR, is in the Children's best interests.  Thus,
we conclude that the Family Court erred in part in COL 21, when
it relied on In re Doe in the manner it did in this case.
However, we must consider that error in the context of the
entirety of the Family Court's decision to grant DHS's adoption
petition, and deny Appellants' adoption petition, in order to
determine whether that error was harmless error or whether the
Family Court's adoption decisions must be vacated.  Accordingly,
we will return to this after considering the other issues raised.

> (2)  In COL 23, the Family Court concluded:

> 23.  The concurring opinion in the Hawaiʻi Supreme
> Court decision in In re AS, stated that the relevant
> statutes do not preclude "kinship" (blood relationship) as a
> substantial factor in determining which permanent placement
> is in the children's best interests pursuant to the
> permanent plan.  In re AS, 132 Hawaiʻi at 390, 322 P.3d at
> 285 (Acoba, concurring).  This concurring opinion is not
> binding precedent.  Further, the validity and applicability
> of this concurring opinion is questionable based on the
> Hawaiʻi Supreme Court decision in In re of [sic] AB, 145
> Hawaiʻi 498, 517, FN 35, 454 P.3d 439, 458, FN 35 (2019),
> where the court stated, "It is also unclear whether the
> family court considered this court's holding that there is
> no relative placement preference in HRS chapter 587A with
> respect to permanent placement of foster children."
> (Internal quotation marks and brackets omitted) (citing In
> re AS, 132 Hawaiʻi at 370, 322 P.3d at 265).

The Family Court was not wrong in concluding that a
concurring opinion of the supreme court is not binding precedent.
However, the Family Court was wrong to conclude that validity and
applicability of the concurrence in In re AS was rendered
"questionable" based on the quoted footnote in In re AB.  In re
AB does not reject the concurrence in In re AS; it merely

observed that the family court in that case appeared to accept DHS's relative placement recommendation "without any serious inquiry into AB's best interests," and thus, it appeared to rely on a kinship placement "preference." In re AB, 145 Hawaiʻi at 517 & n.35, 454 P.3d at 458 & n.35.

In this case, although the Family Court gave no weight to an expert witness's testimony regarding the benefits of relative placement, the Family Court clearly considered that the Appellants were blood relatives and that the Children's ability to maintain biological family connections was beneficial. The Family Court also considered that both sets of prospective adoptive parents averred that they would maintain those connections, and CG and AG had a consistent track record of doing so throughout their service as RCGs. While the Family Court may have rejected kinship as a "substantial" factor in this case, the court's adoption decision was based on its analysis of the best interests of the Children in light of numerous factors, and the court's misreading of the footnote in In re AB was harmless error under the totality of the circumstances here.

(3) Appellants argue that the Family Court erred when it failed to find that DHS unreasonably withheld its consent to their adoption of the Children. The challenged FOFs and COLs are as follows:

> 194. The DHS credibly assessed that the permanent placement of the Children with the [RCGs], instead of [Appellants], is in the Children's best interests. The factual bases for the DHS' assessment are (but not limited to) that the Children shall not be separated and must remain

permanently in the same placement, the Children identify the [RCGs] as their parents and the [RCGs'] home as their home, the [RCGs'] demonstrated ability to care for all of the Children's needs, especially [AK's] emotional and behavioral needs, the length of time the Children have resided in the [RCGs'] home, the Children's, especially [AK's], need for stability, the [RCGs'] willingness to maintain connections with the Children's biological family, including Father, the DHS reliance on communications by [paternal grandmother] regarding the paternal family's position supporting permanent placement of the Children with the [RCGs], and concerns about [Appellants'] commitment to the Children.

195. The DHS, as the Children's permanent custodian, consented to the adoption of the Children by the [RCGs], but did not consent to the adoption of the Children by [Appellants].

196. In addition to consenting to the adoption of the Children by the [RCGs], the factual bases for the DHS' withholding of its consent to [Appellants] adopting the Children are the same factual bases for the DHS assessing that the permanent placement of the Children with the [RCGs] is in their best interests. The DHS did not unreasonably withhold its consent to the adoption of the Children by the [Appellants].

197. None of the underlying facts and data upon which the DHS based its opinions, assessments and recommendations were shown to be unreliable or untrustworthy. The DHS' continuing assessments in this case were conducted in an appropriate manner.

. . . .

28. As the children's permanent custodian in the CPA proceedings, the DHS is required to consent to an adoption petition pursuant to HRS § 578-2(a)(6), unless consent is dispensed under HRS § 578-2(c). Matter of Adoption of H.A., 143 Hawaiʻi at 75-76, 422 P.3d at 653-54. The court may dispense with the DHS' consent when it finds that the DHS failed to respond to a written request to consent to the adoption petition or the DHS unreasonably withheld its consent pursuant to HRS § 578-2(c)(1)(H). Id.

. . . .

30. The party challenging the DHS' withholding its consent to an adoption petition has the burden to prove, by the preponderance of the evidence, that DHS' withholding of its consent is unreasonable.

. . . .

34. The DHS, as the Children's permanent custodian in the FC-S No. 18-00112 and FC-S No. 18-00241 CPA proceedings, did not unreasonably withhold its consent to the adoption of the Children by [Appellants].

11

In In re HA, this court held, *inter alia*:

> [T]he family courts must make a separate inquiry into
> whether the applicable HRS § 578-2 consent provision has
> been satisfied, or whether the first of the four HRS
> § 578-8(a) requirements has otherwise been met.  With
> respect to the unreasonableness of DHS's withholding of
> consent to adoption, consistent with the standard applicable
> to other aspects of permanent placement, we hold that the
> party challenging DHS's action bears the burden of proving,
> by a preponderance of the evidence, that the withholding of
> consent is unreasonable.  See In re AS, 132 Hawaiʻi at 377,
> 322 P.3d at 272.  The reasonableness of DHS's decision
> should be examined in light of the process undertaken and
> the reasons articulated by DHS in support of its decision to
> withhold consent.  Inevitably, many if not all of DHS's
> considerations regarding consent will be germane to the
> requirement that the adoption be in the best interest of the
> child.  However, no decree of adoption may be entered unless
> all of the HRS § 578-8(a) requirements have been satisfied.

In re HA, 143 Hawaiʻi at 78-79, 422 P.3d at 656-57 (footnote

omitted).

Here, the Family Court separately considered and

clearly examined the reasonableness of DHS's decision to withhold

consent in light of the process undertaken by DHS in reaching

that decision, as well as the reasons articulated by DHS in

support of its decision to withhold consent to the Children's

adoption by Appellants.  As anticipated in In re HA, here the

factual basis for DHS's consenting to RCGs' adoption of the

Children was essentially the same as DHS's withholding of consent

to Appellants' adoption of the Children.  As it is not possible

for two different sets of parents to adopt the same child or

children, it is not inherently unreasonable for DHS to consent to

only one or the other adoption, but not both.[2]  Although DHS arguably could have obtained an ICPC assessment for placement with Appellants at an earlier date, Appellants themselves were apparently (and understandably) reluctant to disturb the Children's temporary placement with the RCGs prior to the termination of Father's parental rights.  At no point did the Family Court find or even suggest that Appellants were not proper and fit to become the adoptive parents.  Rather, the Family Court found that it was not unreasonable for DHS to withhold consent for Appellants to adopt because the Children's best interests were paramount, and – notwithstanding the fitness of both sets of prospective adoptive parents – great weight was given to the Children's identification of the RCG family as their family, as well as the Children's needs for stability, particularly AK's needs in light of the turmoil and trauma of her early years.  These were not the only factors considered by DHS or the Family Court, but they could fairly be considered the tipping-point factors in this case.  We conclude that the Family Court did not clearly err in finding that DHS did not unreasonably withhold consent to Appellants' adoption of the Children.

---

[2]     This should not be construed as stating that it would (or would not) be inherently unreasonable for DHS to give consent for adoption to two sets of competing adoptive parents, as that circumstance is not presented here.

(4) Appellants challenge the Family Court's findings and conclusions that CG and AG are financially able to give the Children a proper home and education, as required in HRS § 578(a)(3). The record evidences that AG did not work outside the home and therefore did not contribute to the family's income. As reflected in the Family Court's unchallenged FOF 169, CG works as a minister. It appears that his income is not "regular" in the sense that it stems primarily from donations for his pastoral services that are not tied to a particular church or congregation, and he does not have a steady monthly paycheck. In addition, CG has tapped now-dwindling investments to supplement his income as a minister. CG testified that his annual income was in the range of $90,000, which would average out to about $7,500 month. There is no direct testimony, testimony on cross-examination, or other evidence in the record to the contrary. Although the Family Court clearly erred in misstating this testimony as approximately $9,000 monthly, the court did not clearly err in basing its determination that CG and AG are financially able to give the Children a proper home and education on this testimony, as well as DHS's assessment that they had no concerns about the RCGs' financial ability. The Family Court's error in the "specific" approximation of monthly income is harmless, as there is no evidence or argument that the monthly average income supported by CG's testimony is inadequate to give

14

the Children a proper home and education. In addition, Asato testified that CG had demonstrated resourcefulness to secure the funds needed to care for the Children, including enrolling AK in an appropriate school and providing other necessary educational expenses such as specialized tutoring, as reflected in the court's FOFs. Although Appellants challenge this finding, they point to no testimony or other evidence in the record and ask this court to consider their superior financial security and ability to provide for the Children's needs. While it is clear from the record that, comparatively, Appellants stand on firmer ground financially, the question is whether the Family Court clearly erred in finding and concluding that CG and AG are financially able to give the Children a proper home and education. Considering all of the evidence and the reasonable inferences therefrom, we reject Appellants' argument that the Family Court clearly erred in this regard.

(5) Appellants contend that the Family Court clearly erred in its consideration of the factors listed in HRS § 571-46(b), which the appellate courts have recognized as potentially applicable, along with other considerations, in the context of a child's best interests in an adoption case. Appellants argue that the Family Court failed to heed the supreme court's directives in In re AS, as well as this court's opinion in In re HA, by giving too much deference to DHS's permanent placement

15

determination, and failing to make its own independent determination of the best interests of the Children here. The Hawaiʻi appellate courts have consistently recognized DHS's statutory charge, expertise, and discretion to make an initial determination as to permanent placement. See In re AS, 132 Hawaiʻi at 377-78, 322 P.3d at 272-73; In re HA, 143 Hawaiʻi at 76-77, 422 P.3d at 654-55. In the same breath, the appellate courts also made clear that the Family Court must make its own independent determination of the best interests of the children. We reject Appellants' argument that the Family Court in this case failed to independently evaluate all of the evidence and make its own judgment as to the best interests of the Children. Our review of the totality of the record leaves us with a firm conviction that the Family Court did in fact independently evaluate all of the evidence and make its own judgment as to the best interests of the Children. We further reject Appellants' invitation to revisit the supreme court's placement of the burden of proof on the party who is challenging DHS's determination. See In re AS, 132 Hawaiʻi at 377, 322 P.3d at 272; In re HA, 143 Hawaiʻi at 77, 422 P.3d at 655.

(6) Appellants contend that the Family Court erred by treating the length of the Children's placement with RCGs as a presumption that the Children should be permanently placed with the RCGs. This argument is without merit. Here, the Family

Court separately weighed all of the HRS § 571-46(b) factors (and other factors as well), and considered all of the evidence before it and the circumstances of the Children individually and as a family unit.  AK's attachment in particular to AG and CG was relevant and important to many of the considerations concerning the best permanent placement of the Children.  While we understand why MR and DR might view the period of the Children's bonding with the RCGs as having been a nearly insurmountable hurdle – and we have recognized these bonds as a tipping-point issue in this case – there is nothing in the record to suggest that the Family Court treated the length of the Children's placement with RCGs as a presumption that the Children should be permanently placed with the RCGs.

Finally, we return to the issue of the Family Court's error in COL 21.  Upon review of the entirety of the record, including the Family Court's oral rulings, written orders, and all of the FOFs and COLS, we conclude that the Family Court's error in COL 21 was harmless.  Ultimately, the Family Court properly undertook all of the statutory requirements for entering an adoption decree, in light of the relevant guidance provided by the appellate courts, based upon the testimony and evidence before it.

For these reasons, we affirm the Family Court's April 6, 2021 Orders Concerning Child Protective Act entered in FC-S

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

No. 18-00112 and FC-S No. 18-00241, and its April 6, 2021 Orders

filed in FC-A No. 20-1-6137 and FC-A No. 21-1-6005.

DATED: Honolulu, Hawaiʻi, April 18, 2022.

On the briefs:                          /s/ Katherine G. Leonard
                                        Presiding Judge
Francis T. O'Brien,
for Intervenors/Petitioners/            /s/ Clyde J. Wadsworth
  Respondents-Appellants.               Associate Judge

Patrick A. Pascual,                     /s/ Karen T. Nakasone
Julio C. Herrera,                       Associate Judge
Ian T. Tsuda,
Regina Anne M. Shimada,
Deputy Attorneys General,
State of Hawaiʻi,
for Petitioner/Respondent-
 Appellee DEPARTMENT OF HUMAN
 SERVICES.